■ In the Matter of IRVING SCHATZ, Respondent, v DEPART-MENT OF CONSUMER AFFAIRS OF THE CITY OF NEW YORK et al., Appellants, et al., Respondent.—Order and judgment (one paper), Supreme Court, New York County (Jacqueline W. Silbermann, J.), entered on or about January 3, 1991, which, on consent, granted the motion of respondents, Departments of Consumer Affairs (DCA) and Transportation, to resettle an order and judgment (one paper), entered on or about October 9, 1990, granted the petition, ordered the owner and operator to move a certain newsstand to a point 232 feet east, and, in the event that the owner and operator does not comply with the order to move the newsstand, then the DCA is ordered to revoke the newsstand license, is unanimously reversed, on the law and on the facts, the judgment is vacated, the determination of the DCA to issue the license is confirmed, the petition is denied, and the proceeding is dismissed, without costs.

Appeal from order and judgment (one paper), same court and Justice, entered on or about October 9, 1990, is dismissed as subsumed in the order and judgment (one paper), entered on or about January 3, 1991, without costs.

In September 1987, Mr. Serafettin Mehmet Ugur filed an application, with the Department of Consumer Affairs of the City of New York, for the purpose of obtaining a license to construct and operate a newsstand, located on the northeast corner of 57th Street and Ninth Avenue, New York County.

Administrative Code of the City of New York § 20-231 (c) provides that a license to operate a newsstand cannot be issued without the approval of the Department of Transportation (DOT) of the City of New York. Accordingly, in March 1989, DOT inspected the subject site and objected to it on the ground that the "Drawing does not indicate any sidewalk measurements or sidewalk furniture distances". Upon the basis of that DOT objection, the DCA denied the application.

Thereafter, in August 1989, Mr. Ugur reapplied for a license. Although DOT initially objected, since a new DOT inspection indicated that there was a tree located one foot from the newsstand location, DOT indicated that this objection would be withdrawn, if the newsstand was located five feet from the tree. Subsequently, when that condition was satisfied, DOT informed DCA that it no longer objected to the issuance of a license.

Pursuant to New York City Sidewalk Stands Regulation No. 5, DCA now forwarded Mr. Ugur's application to Manhattan Community Board No. 4 (Board) for their review and recom-

mendation. After a public hearing, that Board adopted a resolution approving the application, upon the conditions that the newsstand have perimeter lighting, be illuminated at night, even when closed, and that the owner make sure that bundles of Sunday newspapers will not be permitted to create an obstacle for pedestrians and shoppers. Further, the Board noted in its resolution, in pertinent part, "the owner has * * * taken into account the truck loading zone set aside for D'Agostino supermarket by placing the stand at the eastern most end of the store away from both the store's entrance/exit and also from the conveyor belt used for loading and unloading deliveries, and the unloading zone of the Henry Hudson Hotel at 353 West 57th, which ends just about where the stand begins".

While Mr. Ugur's application was being processed, on or about December 16, 1989, the DOT approved a request made by representatives of D'Agostino's Supermarket (Supermarket), located at 353 West 57th Street, New York County, to designate approximately eighty-eight feet of the street at the northwestern most edge of 57th Street, between Eighth and Ninth Avenues as a "loading zone", and, as a result, DOT erected signs designating the boundaries of that zone, which read, "No Standing Except Trucks Loading and Unloading".

Following DOT's approval of the Supermarket's request, on or about December 17, 1989, representatives of the DOT, Department of City Planning, the Art Commission, and the Mayor's Office of Operations met to discuss Mr. Ugur's application. Since in the course of that meeting a question had been raised as to whether the newsstand's location improperly interfered with the Supermarket's loading zone, on the next day, DOT reinspected the site, finding that the newsstand did not conflict with the loading zone.

During January 1990, the Art Commission found appropriate a color sample submitted by Mr. Ugur.

Subsequently, based upon DCA's review of the entire record, including the approvals of DOT, the Board and the Art Commission, the DCA informed Mr. Ugur, by letter, dated February 6, 1990, that he had permission to construct a newsstand on the site, but warned him that "This is not approval to operate a newsstand" (underscoring in text).

After receiving a letter from Mr. Ugur, dated May 25, 1990, indicating that the newsstand had been erected, DCA inspected it, finding that the newsstand was three inches wider than approved. As a result of that finding, DCA warned Mr. Ugur, by letter, dated June 13, 1990, to, *inter alia,* "Please

adjust your stand immediately. If you do not adjust the dimension of the width of the stand by July 11, 1990 your application will be denied" (underscoring in text). Following notification from Mr. Ugur that he had cured that defect, and verifications of that fact, by two more on the scene DCA inspections, DCA approved his application for a license to operate a newsstand, on July 13, 1990.

Mr. Irving Schatz is the owner of a commercial condominium unit (premises), located in the Henry Hudson Hotel, 353 West 57th Street, New York County, and one of his tenants in those premises is the Supermarket.

By order to show cause, dated July 5, 1990, Mr. Schatz (petitioner) initiated the instant CPLR article 78 proceeding against DCA, DOT and John Doe (later identified as Mr. Ugur) for an order, enjoining the DCA from issuing a license to operate the newsstand in its present location. The petition alleges, in substance, that the newsstand is a safety hazard, due to its close proximity to the Supermarket's loading zone. In support of that position, petitioner appended a number of photographs to the petition, which he claims indicate that "scrape marks on the rear of the newsstand [were made by] trucks making deliveries to the * * * supermarket".

Subsequent to the joinder of issue, by order and judgment (one paper), entered on or about October 9, 1990, the IAS Court, in substance, granted the petition, and directed DCA to withdraw and revoke the newsstand's license, "unless the operator and owner of said newsstand moves same approximately 30 feet to the east so as not to interfere with the loading zone in front of the * * * supermarket". Since the DOT determined that the nearest spot to which the newsstand could be moved in compliance with existing law was 232 feet east of the existing site, respondents, DCA and DOT (respondents), moved to re-settle that order and judgment, entered on or about October 9, 1990, to provide that the newsstand be moved 232 feet. Petitioner consented to the motion, and by re-settled order and judgment, entered on or about January 3, 1991, the IAS Court granted same. Respondents appeal.

The law is well settled that "a court may not disturb an administrative decision unless the agency's action was arbitrary and capricious, in violation of lawful procedures or made in excess of its jurisdiction. *(Matter of Pell v Board of Educ.,* 34 NY2d 222.)" *(Matter of Minerva v Ward,* 101 AD2d 754, 755 [1st Dept 1984], *affd* 63 NY2d 739 [1984]; *see also, Matter of Barton Trucking Corp. v O'Connell,* 7 NY2d 299, 312-313 [1959]; *Matter of Berger v Leach,* 103 AD2d 1018 [1984].)

Our review of the record indicates, *inter alia,* that the newsstand was inspected on at least six separate occasions by respondents DOT and DCA to make certain that it complied with all relevant laws and regulations. Further, based upon our examination, we find that DOT conducted a thorough investigation into the specific issue as to whether the location of the newsstand interfered with the Supermarket loading zone, concluding that it did not, and we also find that the petitioner's photographs concerning the newsstand, mentioned *supra,* do not constitute persuasive evidence to overcome that DOT conclusion.

On the basis of the legal and factual analysis, *supra,* and since we find that the determination of DCA to issue the license to operate the newsstand is not arbitrary and capricious *(Matter of Minerva v Ward, supra),* we conclude that the IAS Court erred in granting the petition, and directing the DCA to revoke the newsstand license, unless Mr. Ugur moved it 232 feet east.

Accordingly, we reverse, vacate the judgment, reinstate the determination of the DCA to issue the license, deny the petition, and dismiss the proceeding. Concur—Carro, J. P., Milonas, Ellerin, Wallach and Ross, JJ.